IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LORIE AS-SALAAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV630 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Lorie As-Salaam ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 5, 2011, alleging a disability onset date of February 1, 2010. (Tr. at 10, 173-76.)[1] Her claim was denied initially (Tr. at 77-90, 109-17), and that determination was upheld on reconsideration (Tr. at 91-104, 118-25). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (See Tr. at 126.) Plaintiff, represented by an attorney, testified at the subsequent hearing on November 6, 2013. An impartial vocational expert also

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

testified at that time. (Tr. at 10.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 21), and, on May 27, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-4).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

[ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease causing neck and arm pain, uterine fibroids, bipolar disorder, depressive disorder, posttraumatic stress disorder, histrionic personality disorder, and alcohol, marijuana, and cocaine abuse. (Tr. at 12.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 13-15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work as defined in 20 C.F.R. § 404.1567(c)[4] with the following additional restrictions:

> [T]he claimant must be able to alter positions every hour, and can have only occasional exposure to hazards. The claimant can understand, remember, and carry out simple instructions; sustain attention for simple tasks, would be capable of superficial occasional interaction with coworkers and supervisors, but no public interaction. Finally, the claimant would not be capable of production or pace work, and could perform frequent, but, not constant, handling and fingering.

---

[4] The ALJ mistakenly cites 20 C.F.R. § 404.1567(b) as defining medium work. The ALJ's later references to medium work clarify that she misstated the regulation, rather than the work level. (See Tr. at 19, 20.)

(Tr. at 15.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 19.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 20-21.)

Plaintiff now raises five challenges to the ALJ's decision. First, Plaintiff contends that her claim should be remanded under sentence six of 42 U.S.C. § 405(g) in light of a new medical opinion offered by John Blackshear, Ph.D. (Pl.'s Br. [Doc. #9] at 4-6.) Second, Plaintiff argues that the ALJ failed to properly consider the medical opinions of consultative examining psychologist Ashley King, Ph.D., treating psychiatrist Nevedita Chaudhry, M.D., and treating psychiatrist Teresa Purdy, M.D. (Pl.'s Br. at 6-11.) Third, Plaintiff alleges that both the RFC and the hypothetical question to the vocational expert at step five of the sequential analysis fail to adequately account for her limitations in concentration, persistence, and pace in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Plaintiff then makes two further challenges to the RFC finding, arguing, fourth, that "in the absence of the harmful legal errors discussed above, the RFC would be significantly more restrictive," and fifth, that the ALJ failed to make a proper credibility finding regarding her testimony. (Pl.'s Br. at 4.)

Notably, in the context of challenging the ALJ's treatment of Dr. King's opinion, Plaintiff contends that the ALJ failed to adhere to the requirements of Social Security Regulation 13-2p ("SSR 13-2p") when considering the impact of Plaintiff's substance abuse disorders on her claim. (See Pl.'s Br. at 3, 9) (citing SSR 13-2p; 20 C.F.R. § 404.1535). After

careful review, the Court agrees that the ALJ committed reversible error by failing to fully evaluate Plaintiff's polysubstance abuse and whether it was a factor material to the finding of disability.

A claimant cannot be considered disabled for Social Security purposes if alcoholism and/or drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). To determine whether this is the case, the regulations provide as follows:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b). In other words, § 404.1535 describes a two-step process, which has been further codified and clarified in Social Security Ruling 13-2p. SSR 13-2p (effective March 22, 2013). As part of that two-step process, an ALJ "must *first* make a determination as to disability by following the five-step sequential evaluation process, 'without segregating out any effects that might be due to substance use disorders.'" Piccini v. Comm'r of Soc. Sec., No. 13-CV-3461 AJN SN, 2014 WL 4651911, at *12 (S.D.N.Y. Sept. 17, 2014) (quoting

7

Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003)). If the ALJ finds the claimant disabled based on symptomology alone, he must then follow the five-step sequential analysis a second time to determine "whether the claimant would still be considered disabled if [she] stopped abusing drugs or alcohol." See Piccini, 2014 WL 4651911, at *12.

In this case, the ALJ never explicitly considered the materiality of Plaintiff's substance abuse disorders as prescribed by 20 C.F.R. § 404.1535(b) and SSR 13-2p, and Defendant fails to address this omission in her brief. The ALJ clearly included three substance abuse disorders, namely alcohol, marijuana, and cocaine abuse, among Plaintiff's severe impairments at step two of the sequential analysis. (Tr. at 12.) Had the ALJ then proceeded to properly review the record and, through the course of the full five-step analysis, found Plaintiff "not disabled" *even with these impairments*, the further requirements of 20 C.F.R. § 404.1535(b) and SSR 13-2p need not have come into play.[5] Here, however, "it is not clear from the ALJ's decision that

---

[5]   . . . [B]efore evaluating whether polysubstance abuse is a contributing fact to a finding of disability, the ALJ must first conduct the regular five-step disability inquiry to determine if a claimant is disabled, including as part of this inquiry the impact of any alcoholism or drug addiction. It is only after that point, if the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," that the ALJ then proceeds under § 404.1535 to determine whether the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." 20 C.F.R §§ 404.1535, 416.935; see Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001); Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001); Fennell v. Astrue, No. 4:09–3051–JFA–TER, 2011 WL 1049094, at *4 (D.S.C, Mar. 21, 2001); Puffenbarger v. Commissioner, No. 1:09CV77, 2010 WL 3521583, at *3 (N.D.W. Va. Sept. 7, 2010). Stated another way, if the ALJ finds that a Plaintiff's condition is disabling, he is then required to determine whether the Plaintiff's alcohol and substance abuse was a contributing factor material to the determination of disability, as disability due to drug addiction and alcoholism is not a proper basis for an award of benefits under the Social Security Act if the addiction is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(c), 1382c (a)(3)(J); see also 20 C.F.R. § 416.935; Farkas v. Astrue, No. 11–242, 2012 WL 750547, at * 2 (M.D. Fla. Mar. 8, 2012) ("The Regulations make clear that a finding of disability is a *condition precedent* to the application of [the law requiring a determination of whether alcohol or drug addiction is a contributing factor material to the determination of disability]" (emphasis added).

Hundley v. Colvin, No. CV 9:14-4115-BHH-BM, 2016 WL 423548, at *5 (D.S.C. Jan. 12, 2016), report and recommendation adopted, No. CV 9:14-4115-BHH, 2016 WL 404075 (D.S.C. Feb. 3, 2016).

[she] actually went through the full five-step sequential evaluation first with an eye 'strictly [on the] symptoms, not [the] causes,'" as required by the regulations. Morales v. Colvin, No. 13 CIV. 06844 LGS DF, 2015 WL 2137776, at *25 (S.D.N.Y. May 4, 2015) (quoting Newsome v. Astrue, 817 F. Supp. 111, 134 (E.D.N.Y. 2011)). Significantly, despite noting Plaintiff's suicidal ideation in January 2013 (Tr. at 14), immediately followed by her enrollment for several months in a residential treatment program for cocaine dependence (Tr. at 16), the ALJ makes no clear distinction between Plaintiff's period of substance abuse prior to January 2013, and her sobriety afterward. Instead, the ALJ's decision conflates the two periods and uses evidence from the later time to minimize Plaintiff's earlier symptoms. In doing so, the ALJ ignored the SSA's directive to consider the materiality of Plaintiff's substance abuse only *after* making an initial disability determination.

Additionally, it appears that the ALJ's focus on substance abuse as a "cause" of Plaintiff's mental health symptoms led her to improperly discount the opinions of Drs. King and Chaudhry. Both providers assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 50 (Tr. at 17-18), indicating "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)," Diagnostic & Statistical Manual for Mental Disorders 34 (4th ed. 1994) ("DSM-IV"). Dr. King specifically discussed symptoms in support of this finding, such as poor boundaries, erratic affect, impaired judgment, and hysteria (Tr. at 307-08). Similarly, Dr. Chaudhry diagnosed Plaintiff with PTSD secondary to military sexual trauma ("MST"), depression, and alcohol and

9

marijuana abuse in the context of significant psychosocial stressors, and considered the impact of Plaintiff's substance abuse on her mood, anxiety, and the effectiveness of her medications before assessing her GAF score. (Tr. at 17, 238.)

In assigning only partial weight to these providers' opinions, the ALJ specifically relied on the fact that the opinions were rendered while Plaintiff was still actively using substances. (Tr. at 18.) "[W]hile substance abuse is ultimately "relevant in determining whether a claimant is disabled under the regulations . . . it bears no relevance to the weight that must be given to the opinion of a treating physician." Morales, 2015 WL 2137776, at *26 (quoting Vernon v. Astrue, No. 06cv13132 RMB DF, 2008 WL 5170392, at *20 (S.D.N.Y. Dec. 9, 2008)). Moreover, in the case of Dr. King, the ALJ offered only one other reason for her determination, finding that Plaintiff's ability "to actively participate in group therapy sessions and classes on money management" in November 2013, when she was maintaining sobriety, contradicted Dr. King's opinion indicating Plaintiff "was 'barely' able to relate to supervisors and fellow workers," issued while Plaintiff was still actively abusing substance in September, 2011. (Tr. at 18.)[6]

---

[6] Notably, the ALJ relied on what she characterized as a "multitude" of VA records noting that Plaintiff was "calm and able to participate in group therapy sessions and classes on money management." (Tr. at 18.) However, those records all relate to the 30-60 day period immediately prior to the hearing before the ALJ, during a period of sobriety. The records also reflect at least 3 missed appointments during that same time frame. Moreover, the remaining records relate to the over 2-year period from November 2010 through July 2013. While Plaintiff was using controlled substances during that time, it is not clear exactly when or to what extent. In this regard, the Court also notes that Plaintiff reported to Dr. King at the time of the consultative examination that "[c]urrently she does not abuse substances." (Tr. at 307.) Thus, there appears to be some unresolved question as to whether Dr. King's examination reflected a time period when Plaintiff was actively abusing controlled substances. Because the ALJ did not undertake a full analysis of this issue, did not make findings regarding Plaintiff's impairments when she was abusing drugs or alcohol, and did not undertake any analysis of whether use of drugs or alcohol was material to the determination, the Court is left with analytical gaps and unresolved conflicts in the record.

10

The ALJ's analysis of Dr. Chaudhry's opinion is similar. With respect to Dr. Chaudhry, the ALJ noted that Dr. Chaudhry assessed a GAF score of 50 on November 19, 2010, but rejected that assessment because Plaintiff "was still actively using substances at this time, and was overwhelmed by circumstances." (Tr. at 18.)[7] The ALJ also noted that Plaintiff "is able to seek treatment and engage the VA system to get the help she needs when she chooses," and the opinion was "not consistent with [the] record as a whole." (Tr. at 18.) However, the ALJ failed to identify any inconsistencies between Dr. Chaudhry's 2010 opinion and other evidence from Plaintiff's active years of substance abuse, and as noted above, the decision to reject Dr. Chaudhry's opinion because it was made while Plaintiff was using drugs and alcohol conflates the analysis and makes it impossible to determine whether the ALJ concluded that Plaintiff was not disabled even when using drugs and alcohol, or instead was disabled when using drugs and alcohol but was not disabled when she stopped using drugs and alcohol. While either may be the case, by failing to undertake the proper analysis, the ALJ failed to build a logical bridge between her findings and her conclusions, and the Court is left to guess at the basis of the ALJ's determination in this case.[8]

---

[7] The Court notes that in addition to the GAF of 50 assessed by Dr. Chaudhry in November 2010, and the GAF score of 50 assigned by Dr. King on September 1, 2011, Dr. Chaudhry assessed a GAF of 50 again on January 27, 2012, and on April 16, 2012. When Plaintiff was hospitalized with suicidal ideations in January 2013, her GAF was assessed at 30 and at 40, and after her release from treatment, her GAF was assessed at 40 in July 2013. (Tr. at 238, 308, 404, 820, 826, 891-94, 872-74, 857, 622.) The ALJ focuses on the most recent GAF of 65 in September 2013, but does not address the other assessments during the period from January 2012 to July 2013. It may be that the ALJ discounted all of the other assessments because they were made during a period of alcohol and drug use. However, it is not clear that that is the case, since the ALJ did not make that analysis. Moreover, under the two-step process outlined above, the ALJ was first obligated to consider all of that evidence, and then if Plaintiff was disabled taking all of that into account, to then make a separate materiality determination, including findings as to when Plaintiff was actually using drugs and alcohol and the extent to which that affected the determination.

[8] The Court also notes that Plaintiff has presented the opinion of Dr. Blackshear dated October 5, 2013, apparently made during that same period of sobriety prior to the ALJ hearing, but finding multiple symptoms

11

In short, the ALJ in this case erred in her application of both section 404.1535 and her related evaluation of the medical opinion evidence, and it is "not entirely clear that the ALJ would have . . . reached the same conclusion had [she] adhered to the regulations." Morales, 2015 WL 2137776, at *27. "The Court is mindful that, when the proper legal analysis is followed, the ALJ may conclude that substantial evidence supports a finding of no disability. But to assume that conclusion 'creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" Piccini, 2014 WL 4651911, at *16 (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)). Accordingly, upon remand, the ALJ must base her initial "disability determination on substantial evidence of [Plaintiff's] medical limitations without deductions for the assumed effects of substance abuse disorders." Brueggemann, 348 F.3d at 694. Then, and only then, may the ALJ separately determine whether Plaintiff's substance abuse constitutes a contributing factor material to that determination. See also Hundley, 2016 WL 423548, at *5 (similarly concluding that remand was required so that substance abuse could be properly evaluated using the process set out in SSR 13-2p).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand

---

attributable to Plaintiff's PTSD. This evaluation may ultimately be material in determining the materiality of Plaintiff's drug and alcohol use, following the analysis set out in SSR 13-2p. Although Plaintiff provided her VA records through November 5, 2013, the VA records did not include Dr. Blackshear's report, and Plaintiff attributes this to backlogs at the VA. The Court need not separately consider Plaintiff's request to present this as new and material evidence, given the need for remand to allow the ALJ to undertake an analysis of all of the record evidence using the proper framework. See Dillingham v. Colvin, No. 1:14CV210 RLV DCK, 2015 WL 10353145, at *6 (W.D.N.C. Nov. 5, 2015).

the matter to the ALJ for further consideration of Plaintiff's claims in light of the above recommendation. Defendant's Motion for Judgment on the Pleadings [Doc. #10] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] should be GRANTED to the extent set out herein.

This, the 17th day of October, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge